## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

The United States of America
*Ex Rel.* Steven G. Klotz, M.D.,

        Plaintiff,

        v.

Universal Health Services, Inc., UHS of
Delaware, Inc., UHS of Pennsylvania, Inc.
d/b/a Roxbury Treatment Center,

        Defendants

Civil Action No.:  1:17cv1101

**FILED UNDER SEAL PURSUANT TO
31 U.S.C. §§ 3729, et seq.**

**Jury Trial Demanded**

## COMPLAINT FOR VIOLATIONS OF
## THE FEDERAL FALSE CLAIMS ACT

Relator Steven G. Klotz, M.D. (Relator), by and through his undersigned attorneys, on

behalf of the United States of America (the United States) for his Complaint against Universal

Health Services, Inc. (UHS), UHS of Delaware, Inc. (UHS Delaware), and UHS of

Pennsylvania, Inc. d/b/a "Roxbury Treatment Center" (Roxbury Treatment Center) (collectively

the Defendants) alleges based upon personal knowledge and relevant documents as follows:

## I. INTRODUCTION

1.     This is an action to recover damages and civil penalties on behalf of the United

States of America arising from false and/or fraudulent records, receipts, statements and claims

made, used and caused to be made, used or presented by Defendants and/or their agents,

employees and co-conspirators in violation of the Federal Civil False Claims Act, 31 U.S.C.

§3729 et seq., as amended (the FCA or the Act).

2.     This matter concerns the systematic misappropriation of federal and state funds

by the Defendants who falsely and routinely characterized as suicidal and unstable, agitated,

psychotic and/or dangerous the patients of federal and state funded health benefit programs,

including but not limited to the Medicare, Medicare Part D, Medicaid, and Tricare programs; to

1

Certified from the record
Date Nov. 13 2017
Peter J. Welsh, Acting Clerk
Per
Deputy Clerk

justify not only the admission of these patients into their facilities but also to exploit the recertification process to extend the length of stay and confine those patients for longer than is medically necessary.

3.     The violations alleged herein involve false and fraudulent claims that the Defendants have made, or caused to be made, since on or before 2010. It is estimated that this fraud has cost the taxpayers tens of millions of dollars each year, and is ongoing.

4.     Relator Steven G. Klotz, M.D. brings this action on behalf of the United States to recover the tens of millions of dollars these federal and state funded health benefit programs have been fraudulently induced to pay as a result of false and/or fraudulent reimbursement claims submitted by, and caused to be submitted by, Defendants.

## II.  PARTIES

### A. Dr. Steven G. Klotz

5.     Relator Klotz is a credentialed psychiatrist with extensive experience in drug and alcohol rehabilitation treatment and also with inpatient psychiatric care.

6.     Relator Klotz is well-situated to file this qui tam claim. Dr. Klotz is a Child, Adolescent and Adult Psychiatrist, with extensive training and expertise in Addiction Medicine. Dr. Klotz graduated with an A.B. in Chemistry and Biochemistry from Columbia College, Columbia University and a M.D. degree from Mount Sinai School of Medicine. Relator's post-graduate medical training and other education includes: a Fellowship at the Department of Psychiatry, Division of Child and Adolescent Psychiatry at Stony Brook University Hospital; Residencies at Department of Psychiatry, Stony Brook University and Department of Anesthesia at New York University; and an Internship at the Department of Medicine at Beth Israel Medical Center.

7.     Dr. Klotz has authored scholarly letters/reviews/articles that have been published in numerous respected peer review medical journals including:  The New England Journal of Medicine; Child and Adolescent Psychiatry; Mental Health and APA Abstracts; General Hospital Psychiatry; Journal of Child and Adolescent Psychopharmacology; and Psychiatry Source.  He is lifetime certified by the American Medical Association, the American Psychiatric Association, the American Academy of Child & Adolescent Psychiatry, the American Society for Addiction Medicine, the International Association for Pain and Chemical Dependency and the National Alliance on Mental Illness.

8.     Dr. Klotz resides and is currently licensed as a medical doctor in Pennsylvania where he practices psychiatric and addiction medicine.  Dr. Klotz's practice specialties are Adult Psychiatry and Child and Adolescent Psychiatry.  Dr. Klotz is also a recognized expert in the diagnosis and treatment of mental illness.

9.     Dr. Klotz was employed at Defendants' Roxbury Treatment Center between March and May of 2010, and resigned his position as a direct result of pressure placed upon him to participate in what one of Defendants' current employees characterized as the "milking of Medicaid" and his refusal to participate in the fraud.

10.     Dr. Klotz, through his background, training and experience became familiar with the proper protocols and laws governing payment made on behalf of patients of federal and state funded health insurance programs, and easily recognized when those protocols and laws were violated to maximize profits.

11.     Dr. Klotz's witnessing of Defendants' scheme during his employment at the Roxbury Treatment Center, places Dr. Klotz in a unique position to uncover and expose Defendants' unlawful misrepresentations.

12.     Dr. Klotz is currently the Medical Director of Momentum Services, LLC (Momentum) in Chambersburg, Pennsylvania. Momentum serves the same geographic area as UHS Roxbury and is often the follow-up provider to patients discharged by UHS Roxbury. At times Momentum refers patients to Roxbury for higher level of care.

**B. UHS**

13.     Universal Health Services, Inc. is a Delaware Corporation with headquarters in King of Prussia, Pennsylvania, and is a holding company that operates through its subsidiaries including Defendant UHS of Delaware, Inc. and Defendant UHS of Pennsylvania, Inc. d/b/a "Roxbury Treatment Center." UHS is one of the nation's largest providers of inpatient mental health services.

14.     Defendant UHS of Delaware, Inc. is a Delaware corporation, and serves as the management company for Defendant Universal Health Services, Inc.

15.     Healthcare and management operations are conducted by Universal Health Services, Inc., as well as by subsidiaries of Defendant Universal Health Services, Inc., including Roxbury Treatment Center – a Pennsylvania corporation with its principal place of business in Shippensburg, Pennsylvania.

16.     Universal Health Services, Inc. is intimately involved in the operations of each of its subsidiaries, including, but not limited to, recruiting and hiring clinicians and staff, contracting with employee physicians, promulgating its guidelines for the unwarranted treatment of patients of federal and state funded health insurance programs, providing the unwarranted services for those patients, and in establishing the policies and procedures to invoice for the fraudulently provided services.

4

17.    Universal Health Systems, Inc. also employs and trains the utilization review coordinators responsible for conducting the required and ongoing clinical audit of patient records to determine the medical necessity for the recipients' care on an inpatient basis.

18.    Defendants operate a behavioral health unit known as the Roxbury Treatment Center in Shippensburg, Pennsylvania. The unit is intended to treat individuals suffering from a host of mental and behavioral difficulties.

## III.   JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. §§ 1331 and 1345. The underlying facts which support this Court's jurisdiction are set forth below in greater detail. Under 31 U.S.C. §3730(e), there have been no statutorily relevant public disclosures of the "allegations or transactions" in this Complaint. Relator Klotz, moreover, qualifies under that section of the False Claims Act as an "original source" of the allegations in this Complaint even had such a public disclosure occurred.

20.    Within 30 days of the filing of this Complaint, Relator shall serve upon the Attorney General of the United States and the United States Attorney for the Middle District of Pennsylvania, a copy of the Complaint and a statement summarizing known material evidence and information related to this Complaint, in accordance with the provisions of 31 U.S.C. § 3730(b)(2). Because the statement includes attorney-client communications and work product of Relator's attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the Relator understands this disclosure to be confidential and the initial disclosure statement and all documents provided therewith, and all supplements thereto, are incorporated herein by reference.

21.     This Court has personal jurisdiction and venue over the Defendants pursuant to 28 U.S.C. §1391(b) and 31 U.S.C. §3732(a) because those sections authorize nationwide service of process and because each Defendant has minimum contacts with the United States.

22.     Moreover, Defendants can be found in, reside, and transact business in this District, and UHS and UHS Delaware, have their principal place of business in this District. This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. §1367(a).

23.     Venue is proper in this district pursuant to 31 U.S.C. §3732(a) because UHS and UHS Delaware are situated within this district and because acts set out in 31 U.S.C. §3729 occurred within this district.

## IV.  GENERAL ALLEGATIONS

24.     By and through this Complaint made pursuant to the FCA, Plaintiff-Relator Steven G. Klotz, M.D., alleges that by and through the actions and omissions of Defendants' directors, supervisors, physicians, nurses, employees and contract workers:  (1) patients who do not meet the requisite medical guidelines are knowingly, intentionally, and routinely approved for federal and state funded health benefits; (2) patients who do not meet the requisite medical guidelines are knowingly, intentionally, and routinely re-approved for unjustified federal and state funded health benefits; (3) patients are knowingly, intentionally, and routinely given unjustified federal and state funded health benefits not mandated by their condition and not medically necessary; (4) Defendants knowingly and intentionally devise false symptoms and overstate the severity of patients' conditions to justify qualifying those patients for inpatient psychiatric care paid for by federal and state funded health care programs; (5) Defendants knowingly and intentionally divert unqualified patient beneficiaries of federal and state funded

6

health care programs to Defendants' 28-day drug and alcohol rehabilitation program by taking

information from patient applicants and applying false and misleading admission criteria to them

including by documenting symptoms that were out of context, not present, and/or misinterpreted;

(6) Defendants fail to provide patient beneficiaries of federal and state funded health care

programs with care that could meet the minimum applicable standard of medical care; and (7)

Defendants further deny appropriate medical care to patient beneficiaries of federal and state

funded health care programs by limiting their access to internal or family medical doctors.

25.     Relator, who works and lives near the Roxbury Treatment Center, has learned

through other former UHS employees that the fraudulent scheme described herein is on-going.

Moreover, Relator has learned that UHS routinely "overstuffs" its facility by adding cots which

allow it to exceed the approved number of patients that it serves, including beneficiaries of

publicly-funded insurance programs. On information and belief, these cots are removed by UHS

in anticipation of federal and state inspection visits. As a consequence, patients at UHS' Roxbury

facility have a high number of inappropriate outcomes, including sexual misconduct between

employees and patients and violent interpersonal interactions.

26.     Relator has also learned that UHS has extended patient lengths of stay (LOS) well

beyond the allowed 28 days up to and including 90 days, and fraudulently charges those

excessive stays to publicly funded insurance programs.

27.     As a direct result of Defendants' improper actions, federal and state funded health

benefit programs paid false or fraudulent reimbursement claims for care that was not medically

necessary and allegedly provided to the Programs' patients.

28.     Defendants directly submitted claims for reimbursement to federal and state

funded health insurance programs, and all such claims for reimbursement were paid by the

United States.

29.     The United States would not have paid such false claims but for Defendants'
illegal and fraudulent conduct.

30.     The FCA provides that any person who knowingly submits, or causes the
submission of, a false or fraudulent claim to the U.S. Government for payment or approval is
liable for civil penalties for each such claim of not less than $5,500 nor more than $11,000, plus
up to three times the amount of the damages sustained by the Government.

31.     Liability attaches under the FCA when a defendant knowingly seeks payment, or
causes others to seek payment, from the Government that is unwarranted or when false records
or statements are knowingly made or used to get a false or fraudulent claim for government
funds paid or approved.

32.     Liability also attaches under the FCA when a defendant knowingly makes, uses,
or causes to be made or used, a false record or statement to conceal, avoid or decrease an
obligation to pay or transmit money to the Government.

33.     The Act allows any person having information about a false or fraudulent claim
against the Government to bring an action for himself and the Government, and to share in any
recovery.  It is a requirement under the FCA that the Complaint be filed under seal (without
service on the Defendant) to enable the Government to conduct its own investigation without the
Defendants' knowledge and to allow the government an opportunity to intervene in the action.

34.     This is particularly appropriate in this instance, because Plaintiff-Relator contends
that the fraud allegations will be further supported through a Medicaid quality assurance review
conducted in accordance with Plaintiff-Relator's guidance.

8

35.     Based on these provisions, Plaintiff-Relator Dr. Klotz seeks through this action to recover on behalf of the United States damages and civil penalties arising from Defendants' making or causing to be made false or fraudulent records, statements and/or claims for reimbursement for ineligible admission and care as the direct and foreseeable consequence of Defendants' false billings.  Relator seeks to recover all available damages, civil penalties, and all other relief for available expenditures impacted by Defendants' fraud.

36.     Plaintiff-Relator Klotz was employed as a psychiatrist at the Roxbury Treatment Center between March and May of 2010.

37.     The Roxbury Treatment Center reserves between 24-30 patient beds in its inpatient psychiatric unit, and another 60 patient beds in its dual diagnosis, drug and alcohol unit.

38.     The Roxbury Treatment Center also recently opened the TRICARE veteran's unit, reserving between 20-30 patient beds to treat veterans for post-traumatic stress disorders and substance abuse.

39.     All combined, the behavioral health unit in Shippensburg can treat up to 90 patients at one time.

40.     Although the Roxbury Treatment Center accepts both privately insured patients and patients of federal and state funded health insurance programs, Defendants have devised a fraudulent scheme to mischaracterize the mental health of publicly insured patients to provide medically unnecessary services to those patients and increase reimbursements.

41.     Defendants bill Medicaid and the other health insurance programs funded by the United States approximately $800 to $1,000 per day, per bed utilized by a qualified beneficiary. The amount charged depends on the level of service claimed to have been provided.

9

42.     Defendants strive to maintain full occupancy of their bed complement by manipulating the patient admission data and utilization review recertification process to assure that each and every available bed is perpetually billable.

43.     Defendants' inpatient compensation is dependent in large part on medical diagnoses and subsequent procedural coding.  Coding procedures are set forth in the *International Coding of Diseases, 9th Rev., Clinical Modification* ("ICD-9-CM").  The ICD-9-CM classifies morbidity and mortality information for statistical purposes and to index hospital records for data storage and retrieval.

44.     Defendants put schemes in place, in violation of the applicable standards, to routinely exaggerate the severity of depression-related illnesses so as to be allocated the maximum length of stay upon admission, and throughout the hospitalization, via manipulating the ICD-9 codes to ultimately justify billing federally funded health benefit programs for acute psychiatric services when such services were neither warranted nor medically necessary.

45.     Defendants operate a patient screening center where intake nurses routinely categorize patients of federal and state funded health insurance programs as suicidal when the likelihood of patient suicide is extremely low.  The purpose of this improper categorization is to over-recruit patients insured by the government and maintain a 100% occupancy status.

46.     Tellingly, no psychiatrists are involved in the patient intake or admission process.

47.     The differences in admission criteria between privately insured patients and those insured by federal and state funded health insurance programs, as implemented by Defendants at the Roxbury Treatment Center, is a direct violation of law.

48.     Unlike private insurers, who conduct prospective reviews of inpatient services, the federal and state funded health insurance programs conduct reviews retrospectively – or after

the patients are discharged.  Defendants exploit this fundamental difference by extending the inpatient services provided to publicly insured patients by days or weeks by selectively mischaracterizing a patient's symptomatology– depending on whether beds are available at the facility.

49.     Defendants, through Fauzia Sheikh, M.D., the Chief Medical Officer of the Roxbury Treatment Center, instruct other clinicians to create documentation that would ensure publicly insured patients appear more severely afflicted than they are in order to assure reimbursement for medically unnecessary care provided to the patients.

50.     Plaintiff-Relator observed that the facility continued providing inpatient care to publicly insured patients who were recovered or remitted from mental illness for days or weeks. Plaintiff-Relator also witnessed that patient charts were altered to maximize reimbursement rates.

51.     Plaintiff-Relator observed that the facility provided inpatient care to publicly insured patients who had no acute psychiatric illness that required inpatient hospitalization.

52.     Defendants, through Emily Taylor, Vice-President of the Roxbury Treatment Center, directly ordered Plaintiff-Relator to extend hospitalization stays of publicly insured patients and became hostile toward Plaintiff-Relator when he refused to do so for publicly insured patients for whom an extended hospital stay would provide little or no medical benefit.

53.     Defendants put pressure on and/or provide incentives to clinicians to "up-code" patients to the most severe forms of depression and mental illness, including by making direct payments from Defendants to physicians for new patients admitted for inpatient care.

54.     Defendants "up-coded" patients into the most severe forms of depression and mental illness when (a) the medical evidence in the chart did not warrant the diagnosis and also when (b) the evidence in the chart was contradictory, incomplete or ambiguous, requiring further

11

review and analysis.

55.     As a result of these efforts, Plaintiff-Relator observed that Defendants falsely and fraudulently coded patients as suicidal, when the chart did not reflect a likelihood of patient suicide.

56.     By inappropriately coding patients in this manner, Defendants fraudulently increased the severity of the diagnosis/prognosis of these patients and, in turn, increased the Defendants' compensation.

57.     There are many instances where coding of suicidal ideation was unwarranted, and, based on what the Plaintiff-Relator witnessed while employed at Roxbury, and information and belief, Defendants employed the scheme identified above and caused false claims to be submitted to the government for numerous patients. These patient charts and billing records contain the information necessary to identify the false certifications, the dates Defendants submitted the false claims, patient identification numbers used by the Defendants in submitting false claims to the government, and the amount of the false claim.

58.     Plaintiff-Relator believes, based on what he witnessed and the information he gathered while employed with the Defendants and from conversations with other former UHS employees, that the Defendants employed the above-described scheme in the charts of additional patients. This information is contained in patient charts that remain in the sole custody, control, and possession of the Defendants.

59.     Defendants employ and train the first line auditors to undermine the auditing process. These employees not only fail to audit the invoices, they themselves advise the caregivers on how to maximize reimbursement from falsely up-coded patients.

60.     While Defendants falsely increase the diagnostic severity levels of publicly insured patients to justify inpatient treatment, once those patients were admitted, the care provided by Defendants is so deficient as to violate the applicable standard of care.  Defendants' goal is not to restore the patient to the greatest possible degree of health and independent functioning, but to prolong inpatient treatment for as long as possible, exhaust all available funds, and, then transfer the publicly insured patient to Defendants' drug and alcohol treatment program.

61.     Defendants routinely failed to advise patients of the side-effects associated with drugs prescribed to those patients.  The purpose is to minimize the time that physicians spent with patients, and to permit physicians to increase the number of patients seen on any given day.  Defendants falsify records to indicate that patients are advised of side-effects, when the patients are not.

62.     Patients' recoveries were routinely sabotaged by Defendants' protocols to prescribe and utilize more expensive drugs, such as Zyprexa®, which is not on any approved formularies for the treatment of paranoid schizophrenia and bipolar mania and which no publicly insured patient could afford to continue taking upon discharge.  These patients would be compelled to become non-compliant, or would attempt to self-medicate upon discharge, and would soon return to the Roxbury Treatment Center, permitting Defendants to again bill the public for their care.

63.     During inpatient treatment, Defendants' oversight of patient care is so poor that, on any given day, there are many patients suffering from prescribed toxic levels of anti-depressant medications taken as pain medications.  Defendants' conduct routinely endangers the health of the Programs' patients by placing them at needless risk of serotonin syndrome, a life-

threatening disorder caused by the overprescribing of anti-depressant medications and

hypertension metabolic syndrome.

64.     Patients transferred to the drug and alcohol unit of the Roxbury Treatment Center

received the lowest quality of care.  Once the facility recovered a targeted-dollar amount from

public insurers, Defendants encouraged physicians not to see patients.

65.     Although Dr. Indranil Chakabarti is the physician in charge of the 60 bed adult

inpatient substance abuse program at the Roxbury Treatment Center, Dr. Chakabarti holds a full-

time psychiatry position elsewhere, and essentially reports to Defendants' facility on a part-time

basis.

66.     In short, Defendants manipulated the admissions and length of stay recertification

process of publicly insured patients to justify billing the government for acute inpatient care

provided to those patients, and once those patients were admitted, Defendants failed to provide

them with the appropriate standard of care, and instead devised ways to extend their stay or set

the patients up for failure.

## V.  CLAIMS FOR RELIEF

### COUNT ONE

**Violations of the Federal False Claims Act
31 U.S.C. §3729(a)(2)(A)
Presenting or Causing to be Presented False Claims**

67.     Plaintiff-Relator Klotz realleges and incorporates by reference each and every one

of the foregoing paragraphs as if fully set forth herein.

68.     This is a qui tam action brought by Plaintiff-Relator Klotz and the United States

to recover treble damages, civil penalties and the cost of this action, under the Federal False

Claims Act, 31 U.S.C. §3730 for Defendants' violations of 31 U.S.C. § 3729 et seq.

14

69.     The Federal False Claims Act, 31 U.S.C. § 3729(a)(2)(A) provides:

Liability for certain acts. Any person who --

(A) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.

70.     By virtue of the above-described acts, among others, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, and continue to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the United States, in violation of 31 U.S.C. § 3729(a)(2)(A).

71.     Plaintiff United States, unaware of the falsity of the claims that the Defendants submitted to the United States, and in reliance on the accuracy thereof, paid Defendants for claims that would otherwise not have been allowed. These claims were false as that term is defined by the Federal False Claims Act in that they were ineligible for reimbursement as described herein.

72.     At all times relevant to the Complaint, Defendants acted with the requisite scienter.

73.     The amounts of the false or fraudulent claims to the United States were material. Plaintiff United States, being unaware of the falsity of the claims and/or statements caused to be made by Defendants, and in reliance on the accuracy, thereof, paid and continues to pay for Defendants' unlawfully induced claims.

74.     It is believed that, as a result of Defendants' violations of 31 U.S.C. § 3729 (a)(1)(A), the United States has suffered substantial losses in an amount that exceeds tens of millions of dollars, and is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such false claim presented

or caused to be presented by Defendants.

75.     Plaintiff-Relator Klotz is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Federal False Claims Act on behalf of himself and the United States.

## COUNT TWO

### Violations of the Federal False Claims Act
### 31 U.S.C. §3729(a)(2)(B)
### Creation or Use of False Statements or Records Material to a False Claim

76.     Plaintiff-Relator Klotz realleges and incorporates by reference each and every one of the foregoing paragraphs as if fully set forth herein.

77.     This is a qui tam action brought by Plaintiff-Relator Klotz and the United States to recover treble damages, civil penalties and the cost of this action, under the Federal False Claims Act, 31 U.S.C. § 3730 for Defendants' violations of 31 U.S.C. § 3729 et seq.

78.     The Federal False Claims Act, 31 U.S.C. § 3729(a)(2)(B) provides:

Liability for certain acts. Any person who--

> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

79.     By virtue of the above-described acts, among others, Defendants knowingly made used or caused to be made or used false records or statements material to false claims, and continues to do so, in violation of 31 U.S.C. § 3729(a)(2)(B).

80.     Plaintiff United States paid Defendants' claims for reimbursement which would not have been submitted, and thereafter paid by the United States, but for the illegal practices of Defendants described in this Complaint including the creation and use of false statements or records by Defendants.

81.     For those records and/or statements that Defendants made or used or caused to be made or used, it was foreseeable and in fact the intended result that those statements and/or records would result in the payment of false reimbursement claims to Defendants.  At all times relevant hereto, Defendants acted with the requisite scienter.

82.     The amounts of the false or fraudulent claims caused to be paid pursuant to Defendants' false records and statements made or used or caused to be made or used to the United States were material.  Plaintiff United States, being unaware of the falsity of the records and/or statements made or caused to be made by Defendants, and in reliance on the accuracy thereof, paid claims that Defendants knew to be false, as they intended.

83.     It is believed that as a result of Defendants' violations of 31 U.S.C. § 3729 (a)(1)(B), the United States has suffered substantial losses in an amount that exceeds tens of millions of dollars, and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such false record and/or statement made or used or caused to be made or used by Defendants.

84.     Plaintiff-Relator Klotz is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Federal False Claims Act on behalf of himself and the United States.

### COUNT THREE

### Violations of the Federal False Claims Act
### 31 U.S.C. § 3729(a)(2)(C)
### Conspiracy

85.     Plaintiff-Relator Klotz realleges and incorporates by reference each and every one of the foregoing paragraphs as if fully set forth herein.

86.     This is a qui tam action brought by Klotz and the United States to recover treble damages, civil penalties and the cost of this action, under the Federal False Claims Act, 31

U.S.C. §3730 for Defendants' violations of 31 U.S.C. § 3729 et seq.

87.     The Federal False Claims Act, 31 U.S.C. § 3729(a)(2)(C) provides:

Liability for certain acts. Any person who—

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G); …is liable to the United States Government for a civil penalty of not less than $ 5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person, …

88.     In violation of 31 U.S.C. § 3729(a)(2)(C), by the foregoing acts and omissions, Defendants conspired with doctors, nurses, administrators and others to violate §3729(a)(2)(A)(B) and (G) in violation of the False Claims Act, 31 U.S.C. § 3729(a)(2)(C).

89.     By the foregoing acts and omissions, Defendants took action in furtherance of their conspiracies. Said actions constitute violations of the Federal False Claims Act, 31 U.S.C. §3729(a)(2)(C). Defendants committed other overt acts set forth above in furtherance of that conspiracy, all in violation of the laws of and causing damage to the United States.

90.     As a consequence of Defendants' violations of 31 U.S.C. § 3729 (a)(2)(C), the United States has suffered substantial losses in an amount that exceeds tens of millions of dollars, and is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such false claim Defendants conspired to get paid or allowed.

91.     Plaintiff-Relator Klotz is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Federal False Claims Act on behalf of himself and the United States.

## VI.  **DEMANDS FOR RELIEF**

**WHEREFORE**, Plaintiff-Relator, on behalf of the United States Government demands judgment against the above-named Defendants as follows:

18

1.      that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729 et seq.

2.      that Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the Federal False Claims Act;

3.      that Relator be awarded all costs of this action, including attorneys' fees and expenses;

4.      that this Court enter judgment against Defendants for violations of the FCA;

5.      that the United States recovers such other relief as the Court deems just and proper or that is necessary to make the United States whole; and

6.      that Relator recovers such other relief as the Court deems just and proper or that is necessary to make Relator whole.

## TRIAL BY JURY

Relator hereby demands a trial by jury as to all issues.

Dated: June 19, 2017

GAREN MEGUERIAN, ATTORNEY AT LAW, LLC

Garen Meguerian, Esquire (PA ID 78588)
21 Industrial Boulevard, Suite 201
Paoli, Pennsylvania 19301
Tel:  (610) 590-2176
Fax:  (480) 247-5804
gm@garenmlaw.com

Julie A. Grohovsky (DC Bar # 412566)
Shanlon Wu (DC Bar # 422910)
Wu, Grohovsky & Whipple, P.L.L.C.
Ronald Reagan Building & International Trade
Center
1300 Pennsylvania Avenue, N.W., Suite 700
Washington, D.C. 20004
Telephone: (202) 204-3053
Facsimile: (202) 747-7518
Email: swu@dcwhitecollar.com
jgrohovsky@dcwhitecollar.com
Attorneys for Relator Steven Klotz

**Garen Meguerian, Attorney at Law, LLC**

*21 Industrial Boulevard, Suite 201*
*Paoli, Pennsylvania 19301*
*610.590.2176*
*Fax. 480.247.5804*
*gm@garenmlaw.com*
*A PA LLC*

<u>FILED UNDER SEAL PURSUANT TO 31 U.S.C. §§3729, ET SEQ.</u>

June 19, 2017

<u>Via Priority Mail with Delivery Confirmation</u>
Clerk of the United States District Court
Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

Re.:   *The United States of America ex rel. Steven G. Klotz, M.D. v.*
       *Universal Health Services, Inc. et al.*

Dear Madam or Sir:

     Enclosed for filing please find the Complaint, Coversheet, Motion to File Under Seal, and Form of Order in the above-captioned matter.  I have included a .pdf copy of each of these same documents on the enclosed CD-ROM.  Also please find a check in the amount of $400.00 to cover the cost of this filing.

                    Sincerely,

                    Garen Meguerian

Enclosures

```
Court Name: District Court
Division: 3
Receipt Number: 333055926
Cashier ID: epetrosk
Transaction Date: 06/22/2017
Payer Name: GAREN MEGUERIAN
------------------------------------
CIVIL FILING FEE
 For: GAREN MEGUERIAN
 Case/Party: D-PAM-3-17-CV-001101-001
 Amount:        $400.00
------------------------------------
Paper Check Conversion
 Check/Money Order Num: 1953
 Amt Tendered:  $400.00
------------------------------------
Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00


Only when bank clears the check or
verifies credit of funds is the fee
or debit officially paid or
discharged. A $53.00 fee will be
charged for returned checks.
```

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

1:17 cv1101

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
The United States of America, Ex. Rel. Steven G. Klotz, MD

**DEFENDANTS**
Universal Health Services, Inc., UHS of Delaware, Inc., UHS of Pennsylvania, Inc. d/b/a Roxbury Treatment Center

**(b)** County of Residence of First Listed Plaintiff   Dauphin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Cumberland
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Garen Meguerian
21 Industrial Blvd., Suite 201, Paoli, PA 19301

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
31 U.S.C. 3729, et seq.
Brief description of cause:
An action to recover damages arising from false / fraudulent claims made by Defendants.

## VII. REQUESTED IN COMPLAINT:
☐   CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
06/19/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
   United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
   Original Proceedings. (1) Cases which originate in the United States district courts.
   Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
   Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
   Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
   Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
   Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
   **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.